W. B. GRAY v. ROBERT L. BRIDGEFORTH et al.

1. RULE IN SHELLEY'S CASE: EXECUTORY DEVISE.—By the law of Tennessee, although the words " dying without issue," or " dying without heirs," if they stand alone in a will, are construed in their technical sense, and mean an indefinite failure of issue, yet if there be any accompanying word, or clause, or

circumstance in the will, indicating that these words were used by the testator in the sense of dying without issue living at the time of the death of the first taker, that meaning will control. See *Williams* v. *Turner*, 10 Yerg. 289; *Booker* v. *Booker*, 5 Humph. 508; *Bowman* v. *Tucker*, 3 Ib. 650; *Bramlet* v. *Bates*, 1 Sneed, 572.

2. SAME.—The testator directed, that "if any of his children should die without heirs, then the property bequeathed to them is to be equally divided among the balance of his children, or the heirs of their bodies;" it was held that the accompanying words "then," and "to be equally divided among the balance of his children," clearly showed that the limitation over, was to take effect at the time of the death of the first taker, the immediate offspring of the testator, without issue then living; and was, therefore, valid as an executory devise. See *Evans* v. *Wells*, 7 Humph. 568; *Loring* v. *Hunter*, 8 Yerg. 29; *Hickman* v. *Quinn*, 6 Ib.

APPEAL from the District Chancery Court at Holly Springs. Hon. James F. Trotter, vice-chancellor.

Daniel Bridgeforth, in the year 1840, died in the State of Tennessee, where he was then domiciled, leaving a last will and testament, which after his death, was duly proven and recorded in the proper court of that State.

By the first item of his will he directed certain property to be sold for the payment of his debts, and that the remainder of his estate (except that specifically bequeathed), should be kept together during the life of his widow, for her support, and for the education of his small children. The second, third, and fifth items of the will are as follows:

Item 2. It is my will that my executrix and executor, give out of my estate to those of my children herein named, to wit, Robert S. Bridgeforth, Thomas O. Bridgeforth, Henry C. Bridgeforth, Martha M. Bridgeforth, Minerva D. Bridgeforth, Elizabeth M. Bridgeforth, and Maria H. Bridgeforth, each and every one, when they become of age or marry, one horse, bridle and saddle, one bed and furniture, and fifteen hundred dollars in money or property, so as to make them equal to James W. Bridgeforth, Mary A. G. Phillips, and John B. Bridgeforth.

Item 3. It is my will, that all the property I loaned to my daughter Mary A. E. Philips in her lifetime, now deceased, a part

of which is now in my possession, consisting of a negro girl named Abba with her child, and all their future increase, to be given to my grandson Thomas D. Phillips, if he should live to become of age, or the heirs of his body; but if he should die before he becomes of age and without heirs, then said property is to be equally divided among the balance of my children, or the heirs of their bodies that may then be living.

Item 4. . . . . .

Item 5. It is my will, if any of my children named in the second item of this, my last will and testament, shall die without heirs, then the property hereby devised to them, is to be equally divided among the balance of my children named in said second item, or the heirs of their bodies.

By the sixth item he directed, that at the death of his wife, "the balance of my (his) property shall be equally divided between all my (his) children or their heirs."

The specific legacies mentioned in the second item were paid in 1847, and in 1848 the widow died, and the balance of the estate was divided among all the children of the testator, as provided for in the will. Afterwards, Minerva D. Bridgeforth removed to this State, and in the year 1851, intermarried with W. B. Gray, the appellant, and in the year 1854, she died, without ever having had issue, leaving her husband surviving.

Several of the testator's children mentioned in the second item, died before the demise of said Minerva, leaving issue, and this bill was filed by the surviving children mentioned in the second item, and the children of those who had previously died, to recover from Gray the slaves and money received by his wife under the will. Gray demurred, and his demurrer being overruled by the vice-chancellor, he appealed. The opinion of the vice-chancellor is as follows.

The bill in this case was filed by complainants, to recover certain slaves and other personal property in the possession of William B. Gray, which, as they allege, belong to them, and are improperly withheld. They claim title to the property by virtue of the provisions of the last will and testament of David Bridgeforth, who died in the State of Tennessee, where his will was made, and properly recorded.

After bequeathing certain legacies to such of his children as had received no previous advances, the testator directed the balance of his property to be kept together by his widow, during her life or widowhood. She died in 1848, when a division was made, in pursuance of the terms of the will. Minerva D. Bridgeforth, one of testator's children, received as her share of the estate, the property in controversy, and afterwards removed with it to De Soto county, in this State. Here she was married to defendant Gray, who took possession of the property, and kept it until her death, which happened in 1854. She never had any children, and Gray claims the property, by virtue of his marital rights under the law.

Complainants insist, that by the terms of the will of David Bridgeforth, their ancestor, the property was limited over to them in remainder, upon the death of Minerva, without issue. The clause in the will under which they claim is in the following words: "Item 5th. It is my will, if any of my children named in the second item of this, my last will and testament, shall die without heirs, then the property hereby devised to them is to be equally divided amongst the balance of my children named in the said second item, *or the heirs of their bodies.*" "Minerva" was one of the children referred to in the second item of the will.

Her husband, Gray, insists, that the devise to complainants was limited to take effect upon a contingency too remote, and that under the rules of law it is void, and that the absolute fee in the property rested in Minerva, the first taker. This will having been made in Tennessee, where the common law is in full force, the rights of the parties must be decided according to the laws of that State. This opens up a very broad field of inquiry and discussion. It challenges an investigation of all the renowned discussions which have been had of the rule in Shelley's case, for a period of nearly five hundred years, and which, according to Chancellor Kent, have erected a pile of learning, admirable for the specimens it furnishes, of profound logic, skilful criticism, and refined distinction. It is not to be expected that I shall attempt, in this opinion, to explore this vast field of learning, or to analyze the law which it unfolds, much less that I should seek to clear up all its seeming mazes and perplexities, since we are informed by one of the greatest judges that ever lived, that such is the number and character of the deci-

sions on this "rule, and its kindred topics alone, that the mind is overwhelmed by their multitude and the subtlety of the distinctions between them." The rule was engrafted by the courts in England, upon the doctrine of contingent remainders, and its history serves to illustrate the long struggle that was carried on in that country, between the large landed proprietors on the one hand, and their creditors on the other, and also between an overgrown and formidable "nobility," and the "crown." Now we have a statute "*De Donis*," to render the estate inalienable, and thus to strengthen the landed aristocracy. Now a Taltarum's case, to throw the law again into the track of commerce, by means of a common recovery. Then we see contingent remainders pulling the one way, and executory devises jerking the other. And this perplexity and contradiction in the system of the common law is quite as striking in many other important particulars. "A fee cannot be limited upon a fee," says contingent remainder. "Yes, it can," says executory devise. "A freehold cannot be made to commence in future," says the former. "Oh, but it can," says the latter. "An estate to A. B. for life, with remainder to his heirs, means," one would say, "that the first taker shall only have a life estate." "Not at all," answers the rule in Shelley's case; "it means, he shall have the fee, and cuts off his heirs with a shilling." "So a remainder to C. D., on A. B.'s dying without issue, means," say grammar, language, and common sense, "issue living at the death of A. B." "Not a bit of it," says common law; "it means dying without issue at any time, a hundred, a thousand years hence; and thus, though A. B. has actually died without any issue at all, poor C. D.'s estate is void, because it depends on the indefinite failure of issue." This is the language used by a very sensible writer, to characterize the incongruities and inconsistencies of the common law on this subject. And, however we may venerate this mighty fabric as "the gathered wisdom of a thousand years," yet it must be confessed, that in many of its compartments, we recognize many crudities that mar its beauties and harmony. And I must confess, that I can find no cause to sigh over those acts of amelioration, which many of the States have introduced, or to lament with Chancellor Kent over the learning which has thereby been devoted to destruction.

Nevertheless, originating as this case did, in the State of Ten-

nessee, it becomes the duty of the court to inquire whether the will presents a proper case for the application of the rule ; and if so, to make it, irrespective of any considerations connected with its policy.

It is a maxim of universal application, in the construction of wills, to give effect to the intention of the testator, unless that intention is defeated by some inexorable rule of public policy. The intention of this will, can admit, in my opinion, of no doubt. It was, that if any one of the children of the testator, named in the second clause of his will, should die without issue, or children living at his or her death, the share of that one should go over to his surviving children, or to the children of such as might previously have died. Is there anything in the language of the fifth clause of this will, which, according to the settled canons of construction, will defeat this intention ? The rule is fully and clearly stated by Mr. Fearne, in his treatise on "Remainders and Executory Devises." It is as follows : "Although in the limitation of a personal estate, after a ' dying without issue,' those words shall not, *ex vi termini*, and without the concurrence of any other circumstance of intention, signify a dying without issue then living; yet, on the other hand, they shall not, *ex vi termini*, when there is any other circumstance of intention, import an indefinite failure of issue ; but that, in either case, the signification of these words may be confined to a dying without issue then living, by any clause or circumstance in the will, which can indicate or imply such intention." Fearne, 485. And he cites many cases in illustration of this doctrine, p. 472 ; amongst others, the following : *Hughes* v. *Sayer*, 1 Peere Wms. 534; *Nichols* v. *Skinner*, Chanc. Prec.; *Atkinson* v. *Hutchinson*, 3 Peere Wms. 258 ; *Forth* v. *Chapman*, 1 Ib. 663. And the rule thus laid down is recognized by Chancellor Kent, in his Commentaries, and by the judges in every decision which has come under my observation, either in England or this country. Hence, it is clear that if the limitation is made to depend upon a " dying without issue," and there are no superadded words to qualify their meaning, the limitation is void. But it is equally clear, that if there be any such superadded or restrictive clauses, courts of chancery will seize upon them with avidity, and sustain the devise. And very slight expressions, especially in wills of personalty, have

been held to take the case out of the operation of the rule. Thus, in *Hughes* v. *Sayer*, the devise was to the testator's two nephews, and if either of them should die without children, then over to the survivor. This devise was sustained, because it went to the surviving devisee. The ultimate period of limitation, was the death of the surviving devisee. This clearly demonstrated, that a definite failure of issue was in the full contemplation of the devisor. In *Nichols* v. *Skinner*, the same decision was made. In *Atkinson* v. *Hutchinson*, the court seized upon so slight an expression as that of "leaving any issue, to restrict the meaning, to a dying without issue living at the death of the first taker." In New York, the courts have followed these cases. In *Anderson* v. *Jackson*, 16 John. R. 382, the whole doctrine was elaborately discussed, and notwithstanding Chancellor Kent dissented, the court adhered to the former decisions in that State, and held the limitation in that case good. It was simply a devise of real estate to two brothers, sons of the testator, and if either should die "without lawful issue," his share should go over to the survivor. The principle of this case was afterwards confirmed in the case of *Cutter* v. *Doughty*, 23 Wendell, 513. In the great case of *Anderson* v. *Jackson*, which was decided against the opinion of Chancellor Kent, it is not going too far to say, that if the devise had been of personalty, he would have yielded to the prevailing opinions. For he says, in his Commentaries, that in bequests of personal property, the rule will more readily yield to other expressions or slight circumstances in the will, indicating an intention to confine the limitation to the event of the first taker dying without issue living at his death. 4 Kent, 295.

The case of *Self's Admr.* v. *Tune*, 6 Munford, 470, was decided in accordance with this doctrine. In that case the limitation over was made to depend upon the death of Mary Bailey, the first taker, without "heirs of her body," in which event the negroes bequeathed were to be equally divided between the testator's son and daughter and their heirs and assigns forever. Judge Roane says, "If the words 'heirs of her body' had stood alone in the limitation after the death of Mary Bailey, &c., we are of opinion that her title would have been absolute, but the addition of the words 'equally to be divided between them,' compels us to construe them as words of purchase.

Mary Bailey therefore had only a life estate." In the case of *Brook* v. *Croxten*, 2 Grattan's Rep. 506, the language of the will was, "It is my will and desire that if any of my children should die before they attain to legal age, or without a lawful heir, in either case that all such property as they may receive in the division of my property, return to my surviving children or their lawful heirs." No doubt was expressed as to the validity of the limitation in this case, and it was discussed and decided upon grounds, which assumed that it was valid. These authorities are in strict accordance with the English and New York decisions already quoted, and are decisive of this case, unless the decisions in Tennessee overturn their authority. Do they ? In my opinion they sustain and fortify them, if we except the single case of *Polk* v. *Faris*, in 9 Yerger. The case of *Lewis* v. *Claiborne*, 5 Yerger, 370, was decided by Judge Haywood, who has bequeathed to his country a fame as a jurist of which Tennesseans are justly proud. That case is scarcely distinguishable from the present. The limitation was in these words : " It is my will that shall either of my daughters be dead or die without issue, that the before-mentioned lands shall be divided between the surviving ones." This was held to be a good executory devise. First, by the words, " to be divided amongst the survivors ;" for here is plainly contemplated an act to be done in the lifetime of the survivors, which shows the meaning of the devisor to be, that the failure of issue shall be in the lifetime of the survivors. And the rule laid down by Fearne is referred to and adopted by the judge, and the cases in 3, 10, 11, and 16 Johnson's Reports particularly commended, are worthy of adoption in this country. Surely it cannot be said that the case of *Duncan* v. *Martin*, 7 Yerger, 524, establishes any rule inconsistent with this decision. The devise in the latter case was to "A. Perkins, to her and the heirs of her body, lawfully begotten." There were no superadded or restrictive words, and the court decided that A. Perkins took the absolute property in the slaves. The case of *Loring* v. *Hunter*, 8 Yerger, 30, is in strict accordance with the general principles before stated. Judge Green says the rule is purely technical and arbitrary, in affixing a meaning to certain expressions, which must however govern, unless other words are used which explain the intention which then shall prevail. The words used in

the will were, "I lend unto my three daughters, A., B., and C., to them during their natural lives, and then given to the lawfully begotten heirs of their bodies." The word lend was held to control the meaning of the testator, and to take the bequest out of the operation of the rule. And with the single exception of the word "lend," the case was identical with that of *Duncan* v. *Martin*.

The case of *Polk* v. *Faris*, 9 Yerger, would seem to be in conflict with the foregoing; and if so, I can only observe, that amidst all the Tennessee decisions upon this vexed and perplexing question, it stands alone.

For, in the case of *Williams* v. *Turner*, 10 Yerger, 289, the limitation was sustained, where the words were as follows: "It is my wish and desire that, should any of my children die without increase, that my executors shall take back the property, and divide it amongst the rest of my children." And it is remarkable that Judge Reese, who delivered the opinion in *Polk* v. *Faris*, says, when delivering his opinion in *Bowman's Exrs.* v. *Tucker*, 3 Humph. 650, that *Williams* v. *Turner* was correctly decided, because, as he remarks: "Here was the word increase, not issue; and the executors, who were expected 'to be then alive, were to take back the property and divide it." Hence, it is very evident, that however the case of *Polk* v. *Faris* was decided, the general doctrines established in the other cases, are fully recognized by the very judge who decided it. The case of *Bowman's Exrs.* v. *Tucker* was greatly relied on by the counsel for the defendants. It was decided upon the peculiar phraseology used. There were no restrictive or explanatory words. The limitation was to the Lord's treasury, upon the death of Elmira, the first taker, "without issue." There is no difference in principle between this case and that of *Booker* v. *Booker*, 5 Humph. 505. In the latter case, the limitation was to the testator's surviving children, to be equally divided between them. And the latter words were held to be restrictive of the meaning of the words "dying without issue," and to show that a definite failure was contemplated. There is therefore nothing in the Tennessee decisions inconsistent with the principles of the cases from the other States, or with the rule established by Mr. Fearne, in view of the English authorities.

I conclude, therefore, that whilst, in order to prevent perpetuities, the courts will not permit property to be tied up, or rendered inalienable, beyond a moderate or reasonable period, and that an executory devise will not be allowed where the contingency may not happen within a life or lives in being, and twenty-one years and a fraction of a year over; yet they are not at liberty to give this interpretation to such devises, unless the terms used are such, as *ex vi termini*, to demand it; and that they will seize upon any expressions of the devisor which impart a different meaning. The result is plain and inevitable. The limitation, in the present case, is valid, depending upon a definite failure of issue. The language of the will can admit of no doubt, unless we discard the salutary rules of interpretation, adopted by the courts, in order to carry out the intention of the testator, who is presumed to be ignorant of technical and artificial language. The ultimate period of limitation contemplated by the testator was the death of his own last surviving child.

The demurrer must therefore be overruled.

*H. W. Walter*, for appellant.

The first clause of this will disposes of certain property to testator's wife, during her life. The second disposes of most of the balance to his children absolutely. The sixth clause provides that, at the death of his wife, the property given his wife for life, shall go to his surviving children, or the heirs of their body. This limitation is good, because there is a fee devised after the termination of a life estate. The fifth clause of the will is an executory devise, as it attempts to limit the fee disposed of in the second item. The court will remember that there is an absolute fee disposed of in the second clause of the will, and that the fifth clause limits or engrafts another fee on the first. Is the limitation in the fifth clause too remote? We insist that it is. There is no possibility of misunderstanding the rule on this point. It is "that the limitation must be to a life or lives in being, and twenty-one years and a fraction thereafter." This rule is too well settled even to require the citation of authorities to support it. It stands out in bold relief amid the confusion attending the rule in Shelley's case.

Test this case by this rule. In the second clause there is an

absolute devise of certain property to the children of testator. The fifth clause provides, that if any of these children " shall die without heirs, then the property hereby devised to them is to be equally divided amongst the balance of any children named in the second item, or the heirs of their bodies." Did the testator intend limiting this property to a life in being and twenty-one years after ? Certainly not ; for he has made a good executory devise to both his wife and grandchild, by limiting property to them for a definite period, at once ascertainable ; but, when he comes to devising to his children, he makes that devise depend on the indefinite failure of heirs. The testator shows throughout his whole will, that he knows the force of the language employed by him. He creates good executory devises as to his wife and grandchild, but as to his children he employs other language, that creates too remote a limitation. Suppose we put the testator on the stand, and ask him a few questions. Question 1st. Should your daughter Minerva marry, have children and die ; who is to have the property given to her? Ans. Her children. Question 2d. Suppose these children die, who then is to have it ? Ans. My surviving children. Question 3d. But suppose your children should all die before the death of Maria's children, what then is to become of the property? Ans. It shall then go to the heirs of the body of my surviving children. I have employed this language in my will, that should Maria die without heirs, then the property shall go to my surviving children or the heirs of their bodies ; that is, that if all my children are dead, at the time of failure of Maria's heirs, the property devised to her shall go to the heirs of the body of my surviving children. This you may discover also by looking at the other clauses of my will, for in the disposition of property to my wife and grandchild, I have given them an estate to be determined at their death, but I give to my children an estate to be determined on failure of their heirs.

This is the language which the testator would employ in answer to our queries ; it is the language he has employed in his will. There is no possibility of mistaking his intention here. It is a limitation, to take effect on an indefinite failure of issue, and this defeats complainant.

It matters little what may be the conflict in Tennessee decisions. Mr. Watson has drawn from them a rule, under which the appellees

must fail. We have stated the same rule, and are willing it shall govern the case.

There may be, in fact there is conflict in the decisions in Tennessee, but not one of them shakes or even pretends to disturb this rule.

The first leading case in Tennessee, *Polk* v. *Farish*, 9 Yerg. 208, following intimations thrown out by the court in the cases of *Duncan* v. *Martin*, 7 Yerg. 519, and of *Loring et al.* v. *Hunter*, 8 Yerg. 4, claims the full benefit of the rule in Shelley's case, as the law of that State, and abates not a jot or tittle of that rule. It proclaims it, in all its pristine force and vigor. Not a single decision has ever been made in that State which overrules or even shakes that case as an authority. We know that some loose unguarded language has been used in subsequent cases, but the court will see that the cases, as presented by the records, were correctly decided, though in some instances, language not required by the cases have been employed. Let us see what the Supreme Court of Tennessee has said about a case, almost precisely similar to the one at bar. In *Bowman* v. *Tucker*, 3 Humph. 648, a will was construed which uses the following language, viz. Testator, after devising four negroes to his daughter Mrs. Tucker, provides, "that in case my daughter Elmira should die without issue, then in that case all the property that I have given, to be given to the Lord's treasury, to religious societies, such as the Presbyterian Church may direct."

The court, after deciding that this limitation is too remote, uses this language: "Again; dying without children. The latter word has sometimes been held by those struggling against the general rule, as meaning something different from 'issue,' and as more favorable to the limitation in remainder. But here the word issue is used. There can be but little doubt, that the actual intention of the testator, in the use of these words, was in conformity with this well-fixed legal meaning. If he had been asked, whether, if his daughter should leave a child, and that child should live thereafter a month or a year and then die, his wish was that Tucker, the father, should receive this property, or the Presbyterian Church, none would doubt he would have said the latter." In this view of the case, the court decided the limitation was too remote. In the

case now before your court, suppose Bridgeforth had been asked, "Should your daughter marry, have a child that should live a year or a month, and it should die, do you wish the property to go to her husband or your children?" None could doubt his reply, "To the children." In fact, in this state of the case, he actually provides that, should his children die, the property shall go to the "heirs of their bodies." We specially refer the court to this decision in 3 Humph. See, also, 5 Ib. 32. In Booker v. Booker, 5 Humph. 505, the court say, that "to constitute a good executory devise, the contingency upon which it must take effect must occur within a life or lives in being, and twenty-one years and a fraction thereafter. The failure must be definite, and certain to happen within this period." We refer also to the case of Kay v. Conner, 8 Humph. 624, in support of our views.

The case of Bramlet v. Bates, 1 Sneed, 554, is much relied on by both Messrs. Clayton and Watson. We are willing that the case now before your honor may be decided on that case, not on the loose dicta, however, of Judge Caruthers. The case is correctly decided. It is only with the loose language of the judge that we quarrel. The court lay down the general rules of law correctly. They say that no authority need be referred to, to support the rule. "That if the contingency, on which the estate is limited, must happen during the life or lives in being at the time of the devise and twenty-one years, and the ordinary time of gestation thereafter, then the limitation is good; but if it may not happen till after the time, it is bad." Now, we ask the court, if the limitation in the case before you must happen within the period above indicated, and if it may not happen after that period? If it may happen after it, then it is bad.

The court further say in this very case, that "a limitation of an estate, upon the contingency of the first taker 'dying without issue' or 'heirs,' has been uniformly held to be bad as too remote, because these words have an artificial legal meaning, and per se are taken to indicate an indefinite failure of issue." We want no better rule than this. If heirs or issue, in the very case on which our adversaries rely, are per se taken to indicate an indefinite failure of issue, then the word heirs, and heirs of the body, in Bridgeforth's will, must give the property in controversy to appellant.

Again; in *Kay* v. *Conner*, 8 Humph. 624, it is held, that the word heirs, or heirs of the body, are words of limitation, whilst the word children is a word of purchase. The same construction is held of these words in the case on this point in 2 Eq. Leading Cas.

This case does not require the labor bestowed on it. All that we ask is an examination of the cases decided by the courts of Tennessee. There is more apparent than real conflict in them. The apparent conflict grows out of the loose and unguarded language of the court. We have no quarrel with a single case decided in Tennessee. A close examination will reconcile all the cases, though not the language of different judges. The very first case cited by our opponents, of *Loring* v. *Hunter*, 8 Yer., was the case of an executory, not an executed trust. A close examination of all the cases to the last one cited, shows that appellees cannot rely on them. The last case, that of *Bramlet* v. *Bates*, 1 Sneed, shows that the devise was to Joseph Bates and his heirs; but if he should die before Thomas without issue, then the estate was to go to Thomas. Here was a limitation that must happen in the life of Thomas Bates, then in being. This case does not favor complainants. It is only the loose language of the court to which they look. The same may be said of every case to which they refer in Tennessee.

The case, with these remarks, is submitted.

*A. M. Clayton*, for appellees.

This controversy grows out of the will of David Bridgeforth, deceased, who died in the State of Tennessee, where he resided, and whose will was probated in said State. The clause of the will in question is in these words: " If any of my said children shall die without heirs, then the property hereby devised to them, is to be equally divided among the balance of my children or the heirs of their bodies."

Minerva, a daughter of the testator, married the appellant Gray, and died without having had any child. Gray claims the property which she received under the will; and this bill was filed to recover it from him. He filed a demurrer, which was overruled by the vice-chancellor Trotter. The correctness of his decision, holding the limitation over to be valid, is thus involved. Some other parts of

the will may be referred to, but the one above set forth is that upon which the rights of the parties mainly depend.

As this is the will of a person who had his domicile in Tennessee at the time of his death, it will be construed according to the laws of that State. In other words, this court will ascertain what the law of that State is on this subject, and then let that law determine the controversy.

In the construction of wills, especially of personal property, the first and great rule is, that the intention of the testator shall prevail, if it be not inconsistent with the rules of law. *Smith* v. *Bell*, 6 Pet. 68. No one can doubt from the reading of this will, that the intention of the testator was first a bequest to his children, and if any of them should die without children living at his or her death, then to the surviving children of the testator, or if they be dead, then to their children. At the death of his own last surviving child, the ultimate disposition of his property was to take effect, and to vest absolutely. It thus falls clearly within the allotted period of limitation,—a life or lives in being, and twenty-one years thereafter.

Is there anything in the decisions of the courts of Tennessee to make this limitation too remote? In a very recent case, the Supreme Court of that State said : " The subject had been exhausted in their own cases, and nothing remained to be said upon it." *Bramlet* v. *Bates*, 1 Sneed, 572. It there lays down the rule, "that a limitation of an estate upon the contingency of the first taker ' dying without issue' or ' heirs,' has been uniformly held to be bad as too remote, because these words have an artificial legal meaning, and *per se*, are taken to indicate an indefinite failure of issue." "But any supperadded words, indicative of the intention of the testator to confine the meaning of the words ' dying without issue,' to the time prescribed by the rule for a good limitation, will be sufficient to control the legal sense affixed to them, and save the limitation from destruction." And they say, in the language of Mr. Fearne, " that the courts will lay hold with avidity of any circumstance, however slight, to support the limitations over of personal estates." Fearne, 470, 483.

The property in controversy here is personal; and it is necessary to inquire whether there are any superadded words, or any

clause or circumstance which will restrict the words of this will to a definite failure of issue. We think there is abundant reason for such a result.

It is to be observed that the word "heirs" is not a technical term when applied to personal estate. In *Ware* v. *Sharp*, 1 Swan, 497, Judge Green for the court says: "It is plain the word heirs is not used in this deed technically, as it is a conveyance of personal estate; and the defendants must insist that it must have another than a technical signification, in order to give effect to the rule in Shelley's case. As, therefore, another than a technical meaning must be given, we think the word as here used is to be understood in its common signification."

In *Smith* v. *Thompson*, 2 Swan, 386, there was a limitation by deed of personalty, slaves, to the daughter, and after her death, to be equally divided between all her children. The court said, in a will, the intention would of course take effect; but is it so expressed, that it may take effect in a deed, in which, by the rules of law, a more strict construction is required? We are of opinion that it is. The technical terms applicable to real property, have no special meaning, as here applied.

It may be observed, that there is some verbal inaccuracy in the language of the court, in the above, and in various other cases in that State, in speaking of the rule in Shelley's case, as applicable to personalty. Yet a rule very similar to it prevails, in regard to personal estate, and the inaccuracy is scarcely more than verbal.

The very fact that the property is personal, is a circumstance in favor of a restricted construction. The leaning in gifts of personal property is against the indefinite construction, and courts are astute and anxious to catch at any circumstance which will confine the words to a definite failure of issue. Keyes on Chattels, 138; *Campbell* v. *Harding*, 2 Russ. & Mylne, 390; *Booker* v. *Booker*, 5 Humph. 508.

Another circumstance of controlling efficacy, in fixing a restricted construction upon the bequest in this case, is the fact that the ultimate limitation over, is to take effect, upon the death of the last surviving child of the testator. The whole provision ends at that point. Its office is performed. Whoever is entitled, then, takes an absolute interest. If each child of the testator had one or more

children at death, the estate became absolute in them at that period; if none, it was to go over to the surviving brothers and sisters, or to the children of such of them as had previously died. Beyond this point of time, the testator has manifested no intention of controlling his property, and it then became wholly unfettered. As that period falls much within the bounds of the rule directed against perpetuities, the bequest over is not too remote. In all cases, in which the dying without issue is confined to the death of the first taker expressly, by implication, or by statute, the limitation over is not too remote. Keyes on Chat., 198.

The next ground for a restricted construction, grows out of the words "equally to be divided among the balance of my children." The rule is thus laid down, in a recent work of great ability. "By prescribing for the heirs, general or special, a distributive mode of taking, and also superadding words of limitation," the words are cut down so as to create but a life-estate in the first taker. Or, as the rule is laid down in *Horne* v. *Lyeth*, 4 Harr. & John., "the word heirs is changed into a word of purchase, whenever they are not able to take as heirs, by reason of a distributive direction, incompatible with the course of descent." Keyes on Chat., 201. This rule was acted on in the case of *Lewis* v. *Claiborn*, 5 Yerger, 368, and effect given to the words, "equally to be divided." The court says, "By these words, the limitation over to the survivors is a good executory devise." See also, *Perry* v. *Calhoun*, 8 Humph., 551, where the gift was of moieties to two; and *Self's Admr.* v. *Tune*, 6 Munf. 470, in point. *Sisson* v. *Seabury*, 1 Sumner R. 243. I would suppose the rule to be founded on this reason. Where legacies are given in divided shares, as where given to two or more persons, "to be equally divided amongst them," such words will create a tenancy in common, unless a contrary intent appears in the will. 2 Blacks. 320, notes; *Bridgewater* v. *Gordon*, 2 Sneed, 5. The court said, "Under this will, the children take as tenants in common; they take a several interest in the estate in remainder. The rule only applies where there is a class of persons described as a class, who are to take a joint interest in the fund, and who take an aggregate fund as a unit." Hence, as it is only where property is given to heirs as a class, to go to them as a class, from generation to gene-

ration, that the rule in Shelley's case applies, it cannot apply to cases of tenancies in common, because they are at variance with a class of heirs. At common law, the inheritance is single, and the term heirs constitutes but one heir. Keyes on Chat. 76.

It is hardly disputed by the opposing counsel, that if the words at the close of the sentence, "or the heirs of their bodies had been omitted," this would be a valid limitation over. Let us see if they vary the result.

In his essay upon chattels Keyes says, "The natural construction of these words seems to be children, or if there be no children, then grandchildren." Page 76. Several cases in Tennessee accord with the rule here laid down. *Hickman* v. *Quinn*, 6 Yerg. 96; *Loring* v. *Hunter*, 8 Yerg. 29; *Evans* v. *Wells*, 7 Humph. 559. In the last case, the court said, "It is obvious that when he uses the words 'heirs of her body,' he meant children, using the words in their common and ordinary meaning, as representing individuals, and not in its legal sense as representing a class." If these words receive the same construction here, the limitation over must be supported. *Haywood's heirs* v. *Moore*, 2 Humph. 586. The cases of *Hickman* v. *Quinn*, 6 Yerg., and of *Brooke* v. *Croxton*, 2 Grattan, 507, are almost identical in their terms with this. The words in *Hickman* v. *Quinn* are, "I lend to my daughter certain slaves during her natural life, and after her death to the lawful heirs of her body, if there be any; if not, to be equally divided among my other children, or their heirs." The limitation over was held not to be too remote.

The cases on the subject of limitation of estates are very numerous in Tennessee, and in the language of one of their judges exhaust the subject. Those which hold the ulterior limitations to be good, are, *Lewis* v. *Claiborne*, 5 Yerg.; *Booker* v. *Booker*, 5 Humph.; *Hickman* v. *Quinn*, 6 Yerg.; *Evans* v. *Wells*, 7 Humph.; *Loring* v. *Hunter*, 8 Yerg.; *Perry* v. *Calhoun*, 8 Humph.; *Williams* v. *Turner*, 10 Yerg.; *Bramlet* v. *Bates*, 1 Sneed; *Hughes* v. *Cannon*, 2 Humph.; *Ward* v. *Saunders*, 2 Swan; *Bridgewater* v. *Gordon*, 3 Sneed; *Hays* v. *Collins*, 2 Sneed. Those which hold the limitation over too remote, are, *Polk* v. *Faris*, 9 Yerg.; *Kay* v. *Connor*, 8 Humph.; *Bowman* v. *Tucker*, 3 Humph.; *Kilpatrick* v. *Woodrum*, 2 Swan.

Of these, the two first were upon deeds, and the case of *Polk* v. *Faris*, upon a South Carolina deed. It may not be out of place to say, that this court, in the case of *Newell* v. *Newell*, 9 S. & M. 70, held a very similar provision in a will from South Carolina, to create a valid limitation over, but this by the way.

According to all the cases, even *Polk* v. *Faris*, which is the most strenuous in its advocacy of the rule in Shelley's case, much less indulgence is shown to the intention in deeds, than in wills. *Pane* v. *Gupton*, 11 Humph. 404. Indeed, Mr. Fearne says, "It is a mockery, a denial of the import of the word will, not to give effect to the intention, where it does not contravene some rule of law." Page 186. In *Polk* v. *Faris*, Judge Reese complains of this rule, though he was not bold enough to attempt to controvert it. 9 Yerg. 237. In *Bowman* v. *Tucker*, 3 Humph. 650, he admitted the effect of intention in restraining the import of technical words, but said there was nothing in that will "which tended to fix the meaning of the words to a definite failure of issue." . He does not question the rule laid down in other cases, that the court will explore the will for some word or idea to relieve the phrase, " dying without heirs, &c.," of its technical sense. *Loring* v. *Hunter*, 8 Yerg.; *Bramlet* v. *Bates*, 1 Sneed. The case of *Woodrum* v. *Kilpatrick*, 2 Swan, 218, followed *Polk* v. *Faris*, in its application of the strict rule. I shall not remark upon this application, further than to say it does not question the principle for which I contend. It does seem to me however, that it would be difficult to distinguish the case from that of *Ward* v. *Saunders*, in the same book, page 175, in which the limitation over was held to be valid. I can see no difference in principle between the cases. No doubt, however, the court did, though none is pointed out.

I shall not attempt in this brief to go through all the cases in Tennessee, though they are all here referred to. I would, however, invite the attention of the court to *Lewis* v. *Claiborne*, 5 Yerg.; *Loring* v. *Hunter*, 8 Yerg.; *Hickman* v. *Quinn*, 6 Yerg.; *Booker* v. *Booker*, 5 Humph.; and *Bramlet* v. *Bates*, 1 Sneed. If these decisions are followed, they fix the bequest over in this case to be good. *Stare decisis* is a maxim which applies with as much force to construction as to principle. The construction which courts have once given, will in like cases be given again.

Much less shall I attempt to go over all the cases in the books. A great master of legal learning has said, " They are so numerous that the mind is overpowered by their multitude, and the subtlety of the distinctions between them." Lord Eldon in *Jesson* v. *Wright*, 2 Bligh.

A few additional words only. By the cases in Tennessee, it is unquestionably settled, that the word surviving is always restrictive of the technical sense. *Lewis* v. *Claiborne*, 5 Yerg.; *Booker* v. *Booker*, 5 Humph.

Now, although the word surviving is not used in this will, other words are, which have precisely the same import. " The balance of my children," in their connection, can have no other meaning. Notwithstanding the addition of the words, " or the heirs of their bodies," it is manifest, that the ultimate period, in the contemplation of the testator for the vesting of the estate, was the death of his own last surviving child. Upon the occurrence of that event, the office of his will was performed, and the whole scheme of the disposition of his estate perfected. No future or further charge was in his mind, and at the moment of the death of his last surviving child, the estate was finally to vest. This is clearly within the allowed limit, and in our view fully sustains the decision of the court below.

*Watson* and *Croft*, on same side,

Filed an elaborate brief, in which they contended, in addition to the points made by Judge Clayton, that the testator, by the use of the adverb "then," had clearly manifested his intention that the limitation over should take effect upon the death of his own immediate offspring, as they might respectively and successively die without issue living at the time of the death.

HANDY, J., delivered the opinion of the court.

This case depends upon the construction to be given to the will of David Bridgeforth deceased, made and probated in the State of Tennessee, where the testator resided at the time of his death. The clauses of the will necessary to be considered in determining the present case, are as follows:

"Item 2d. It is my will that my executrix and executor give

out of my estate to those of my children herein named, to wit, Robert S. Bridgeforth, Thomas O. Bridgeforth, Henry C. Bridgeforth, Martha M. Bridgeforth, Minerva D. Bridgeforth, Elizabeth M. Bridgeforth, and Maria H. Bridgeforth, each and every one, when they become of age or marry, one horse, bridle, and saddle, one bed and furniture, and fifteen hundred dollars in money or property, so as to make them equal to James W. Bridgeforth, Mary E. A. Phillips, and John B. Bridgeforth."

"Item 5th. It is my will, if any of my children named in the second item of this my last will and testament, shall die without heirs, then the property hereby devised to them *is to be* equally divided among the balance of my children named in the said second item, or the heirs of their bodies."

In May, 1851, Minerva, one of the children of the testator named in the second item of the will, intermarried with the appellant, and died in June, 1854, leaving no children or issue, and leaving her husband surviving her. And afterwards this bill was filed against the appellant by the surviving brothers and sisters of Minerva, named in the second item of the will, and the children of a deceased brother and sister therein named, claiming the property bequeathed to Minerva, in virtue of the second and fifth items of the will.

It is insisted, in behalf of the appellant, that the limitation over in the fifth item of the will, under which the appellees claim, being upon an indefinite failure of issue, is too remote, and therefore void; by reason of which, an estate in fee remained to Minerva under the second item in the will. On the contrary, it is insisted on the part of the appellees, that the limitation, under which they claim, is valid, and that upon the death of Minerva without leaving lineal descendants, her share of the estate vested absolutely in her surviving brothers and sisters named in the second item, and the children then living of such of them as might be dead.

The will having been made in the State of Tennessee, where the testator resided and died, the construction of it, and the rights of the parties depending upon it, must be determined by the law upon the subject as it is declared by the proper court of that State; and as the questions involved have heretofore received the consideration of the Supreme Court of that State, we have but little else to do

than to ascertain what have been the decisions of that court in relation to them.

We will proceed to examine the terms of the fifth item of the will, and to ascertain their legal import according to the rules upon the subject which have been sanctioned in Tennessee. It is agreed that without the provisions of this part of the will, the appellant's wife took an absolute estate in fee, in the property bequeathed to her in the second item of the will; and the question is, what control had the fifth item upon that estate?

The first point of inquiry is, what construction is to be given to the words " die without heirs," in the fifth item, the contingency upon which the limitation therein expressed was to take effect?

It has been frequently held by the Supreme Court of Tennessee that although the words " dying without issue," if they stood alone in the will, must be taken in their technical sense to mean an indefinite failure of issue, yet that any accompanying words or clause or circumstance in the will, indicating that the general words were used in the sense of dying without issue living at the time of the death, will control their meaning. *Williams* v. *Turner,* 10 Yerger, 289; *Booker* v. *Booker,* 5 Humph. 508; *Bowman* v. *Tucker,* 3 Humph. 650; *Bramlet* v. *Bates,* 1 Sneed, 572.

The accompanying words in this will are fully within this rule, and show clearly that the testator intended the limitation over, to take effect immediately on the death of any one of the named legatees, leaving no lineal descendants. The provision is, that if any of his named children " shall die without heirs, then the property hereby devised to them is to be equally divided among the balance of my children named," &c.  Here the contingency upon which the estate limited was to vest, "if any of his children named should die without heirs," is distinctly stated; the time at which it is to take effect is plainly shown, ".then," &c., at the death of any child; the persons to take, are clearly designated, " the balance of his children named, or the heirs of their bodies."  It is most manifest that the testator did not intend by the words " die without heirs," heirs generally, for he immediately limits the estate over to " the balance of his children" (which can only mean the surviving children), who would have been the heirs of the deceased child dying without issue, thereby showing that he was acting in contemplation

that the child would die leaving general heirs.    And it is therefore clear that by " dying without heirs," he meant dying without children or lineal descendants.

In several of the cases above cited, the words used in this will, or words of the same import, are held to control the force of the words " dying without issue," or " without heirs," and to exclude the idea of an indefinite failure of issue.    Thus a limitation to the surviving children upon the death of one of the testator's children, is held to be a definite restriction, within the time allowed by law. So the terms equally to be divided between the survivors, show that the division was intended to be made in the lifetime of the survivors, and of course the estate would clearly vest, not only within the period allowed by the rules of law, but immediately on the death of the child holding the life estate.    *Lewis* v. *Claiborne,* *Booker* v. *Booker.*

So far then as the estate limited to, and claimed by, the surviving brothers and sisters of the appellant's wife is concerned, we think it clear that by the law of Tennessee, it must be held to be a valid executory devise, which vested in the survivors immediately on the death of their sister leaving no children, as their absolute property, and subject to no further limitations.

Is the disposition then that the property should be equally divided among the balance of the children named, or " the heirs of their bodies," void, by reason of the remoteness of the persons to take under these last words ?    And this depends upon the construction to be given to these words, " or the heirs of their bodies ;" which is to be determined by the sense in which the testator used the words, to be collected from all the accompanying clauses and circumstances rather than by their technical import.    *Loring* v. *Hunter,* 8 Yerger, 29.    The question is whether the testator intended the limitation over, of the estate of the deceased child, to take effect and vest absolutely in persons living at the time of the death of such child.

In the first place it appears to be clear that the testator intended that the estate limited over should vest, and the rights of those who were to take, become fixed, at the death of the child dying, and whose estate was the subject of the limitation.    The language is, if any of the named children should " die without heirs,"

"then" the share should be equally divided, &c. If there could be any doubt whether the word "then" referred to time, or was intended ·as a condition, the accompanying words directing an equal division among his surviving children, would show that it had reference to the time, as well as to the condition, upon which the division was to be made. The words "heirs of their bodies," could not therefore be held to extend to heirs indefinitely, and without reference to time ; and the intention of the testator, as manifested by the entire provision, could only be effectuated by interpreting them to mean "children or lineal descendants" of the deceased surviving child named in the second item of the will. Thus, if Minerva died without lineal descendants, leaving all her brothers and sisters surviving her, they took her share of the estate absolutely, and the entire provision of the will, so far as her share is concerned, was satisfied. If afterwards each child died successively, leaving lineal descendants, his share vested absolutely in such descendants ; but if any one of them died leaving no such descendants, his share immediately vested in his surviving brothers or sisters, and the lineal descendants, then living, of any deceased brother or sister who may have previously died. And if all the brothers and sisters but one, died leaving children, upon the death of that last survivor, without lineal descendants, his share immediately vested absolutely, in the lineal descendants then living of his deceased brothers and sisters. Beyond that period the· limitation could not possibly extend; and as the share of the deceased child dying without children, was to be equally divided among the survivors absolutely, it is clear that the limitation was not intended to be postponed beyond the lives of the takers in being, at the death of any of the named children of the testator.

This view of the subject, we think, is fully supported by the decisions of the Supreme Court of Tennessee. The cases above cited hold, that the words "dying without issue," may be explained by accompanying clauses, and restricted to mean, *without issue living at the time of the death of the first taker*. And such words, in their general and technical sense, certainly as strongly import an indefinite failure of issue, as the words under consideration. It is also held by that court, that the words, "heirs of their bodies," when the context of the will justifies it, and shows such to be the testa-

tor's intention, must be taken to mean *children.* *Evans* v. *Wells,* 7 Humph. 568 ; *Loring* v. *Hunter,* 8 Yerger, 29 ; *Hickman* v. *Quin,* 6 Yerger, 96.

These words therefore, cannot under the law of Tennessee, be construed to import a limitation upon an indefinite failure of issue. Nor can they be held to create an estate tail, by cutting down the fee, bequeathed in the second item of the will, to an estate tail, and thereby vest the fee under the operation of the statute of Tennessee in the first taker. *Lewis* v. *Claiborne,* 5 Yerger, 368. Both these positions proceed upon the assumption, that the words must be taken in their technical import, and are not to be controlled by accompanying words, showing a different intention ; which is in opposition to the decisions in Tennessee, and the entire weight of modern authorities.

Upon a consideration of the principles settled in Tennessee, touching the merits of this case, we cannot doubt but that the limitation over, under the fifth item of this will, is a valid executory devise, to which the appellees are entitled.

The decree is therefore affirmed, and the cause remanded, and the defendant below required to answer within sixty days.

SMITH, C. J., delivered the following dissenting opinion.

This controversy grows out of a will made and probated in the State of Tennessee, where the testator was domiciled, and where he died. All the parties claim under the will. Its construction, and their consequent rights under it, must hence be determined with exclusive reference to the laws of that State.

I do not profess to be well acquainted with the laws of Tennessee, particularly with that branch of her jurisprudence with which we have to deal in deciding this controversy. But the questions presented by the record before us, have been the frequent subject of adjudication in her courts. These questions respect the validity of a limitation dependent upon a failure of issue. And one of her learned judges, in a very recent case, has said, that " the subject had been exhausted in their own cases, and nothing more remained to be said upon it." Guided by the light thus shed, and assisted by the learned and ingenious arguments of counsel, we cannot fail to reach a satisfactory conclusion. The controversy turns upon

the construction to be put upon the fifth clause of the will. The clause is in these words : " It is my will, that if any of my children named in the second item of this, my last will and testament, shall die without heirs, then the property hereby devised to them, is to be equally divided amongst the balance of my children named in the said second item, or the heirs of their bodies."

In the second clause the testator directs, that his executrix and executor shall give out of his estate to those of his children therein named, to wit, Robert G., Thomas O., Henry C., Martha M., Minerva D., Elizabeth M., and Maria H. Bridgeforth, each and every one of them, when they become of age, or shall marry, one horse, bridle, and saddle, one bed and furniture, and fifteen hundred dollars in money, or property, so as to make them equal to James N. Bridgeforth, Mary E. A. Phillips, and John B. Bridgeforth.

There is no controversy about the import of the word " heirs," in the fifth clause of the will, preceding the devise over to the balance of testator's children, " or the heirs of their bodies." It means, manifestly, heirs of the body, or lineal descendants, and not the heirs general of the several devisees. If the latter were the import of the word "heirs," no doubt could be entertained, that under the law of Tennessee they took an unqualified estate in the property devised. The limitation in that case being dependent upon a general failure of heirs, would be, according to all the decisions, void for remoteness.

Upon this construction the appellant acquired, in virtue of his marriage with Minerva D. Bridgeforth, the absolute title to the property in controversy. There would hence be no ground for dispute. But, as this is clearly not the proper construction, the ulterior limitation was made to depend upon the dying of any of the legatees named in the second clause, without issue, or heirs of the body. The question, then, to be determined is, whether that limitation was to take effect upon an indefinite failure of the issue or heirs of the body of the immediate devisees, or upon a failure of such issue or heirs, restricted to the death of the party dying, or to some period of time within the limits allowed for executory devises.

The words " die without issue," or " die without heirs," have an " artificial legal meaning, and *per se* are taken to indicate an inde-

finite failure of issue." 1 Sneed's Rep. 554.    It is not questioned
that this is the construction uniformly applied by the courts in Ten-
nessee to these expressions, taken alone, or where by no super-
added word or phrase, an intention is indicated, to restrict the legal
meaning to a failure of issue at the death.

In the construction of wills, the great object is to ascertain the
intention of the testator.    And the courts always give effect to such
intention, when it can be done consistent with the rules of law.
This principle is not less consonant to reason, and consistent with
the dictates of political justice, than it is favored by the courts.    If
a man, permitted by the law, make a disposition of his estate by
last will and testament, the objects of his solicitude and bounty are
as much entitled to have his will, or true intentions, in regard to
the property, carried into effect, as the testator himself was, to in-
voke the assistance of the law to protect him in the possession and
full enjoyment of the property while living.    The principle is a
dictate of judicial fidelity to the law, and justice requires a faithful
compliance with it by the courts.    The reasons which prescribe the
rule define the extent of its operations.    The same principle, which
requires the courts to give such a construction to a testament as
will prevent the intention of the testator from being defeated, if it
can be done without violating the law or its policy, demands that
neither the law nor its policy should be evaded or violated under
the pretext of sustaining the presumed intention of the testator.
It would have been well for the jurisprudence of England and of
this country if this principle had been applied with the wisdom and
fidelity which we are entitled to expect from courts of justice.

The judiciary of Tennessee, following the lead of the courts at
Westminster, have not been singular, in their astuteness, in seizing
upon any circumstance, however slight, in a will, especially a will
of personal property, to justify a restricted construction of words,
to which the law has attached a fixed technical meaning.    The con-
trolling motive is to prevent the intention of the testator from being
defeated.    The effect, in all cases in which the restricted construc-
tion is adopted, is to exclude or evade an ancient doctrine of the
common law recognized there to be in full force, and one which is
most congenial to the spirit of American institutions, thereby sus-
pending, for the time prescribed for the ulterior limitation to take

effect, the power of alienation in the first taker; and thus creating a perpetuity, in the face of the Statute of 1784 abolishing estates in fee tail, the policy of which would seem to be to relieve the property of the commonwealth from the fetters of entailment. But .it is not our province to comment on the policy of the law of Tennessee, but to ascertain the law and its policy, as expounded and declared by her courts, and to enforce them in the decision of the case before us.

It is not controverted that a limitation of an estate, upon the contingency of the first taker dying without issue or heirs, is too remote, and therefore void.

If, therefore, the words, " if any of my children, &c., shall die without heirs," in the fifth clause, "stood alone" as in such case, according to their " artificial legal meaning," they would import a general failure of issue or heirs, there could be no question as to the invalidity of the limitations over. But, it is settled beyond controversy, by the decisions, that any superadded words indicative of an intention to confine their meaning to the time prescribed by the law for a good limitation, will control the legal construction which would otherwise attach to them, and save the limitation from destruction. We have, then, to inquire as to the effect of the words, " to be equally divided amongst the balance of my children, or the heirs of their bodies."

It seems to be settled by the decisions in Tennessee that the words " surviving," or words of like import, when used in conjunction with language expressing a dying without issue, are always restrictive of the technical construction. In *Booker* v. *Booker*, 5 Humph. 505, these words, " surviving children," say the court, " are very expressive of the testator's intention. In the event contemplated, the estate devised to each child is to be equally divided between the surviving children."

And, as it was evident the term " children" was used in its legal and appropriate sense to signify the immediate offspring of the testator, it was held, that a definite failure of issue was intended, for the reason that the testator contemplated an event, that is, a division amongst his immediate surviving offspring, which of necessity must take place within the lifetime of some one of them.

In the will before us, the term " children" is manifestly used in

its appropriate sense to signify the immediate offspring of the testator. And, by the reference which is made to the second clause of his will, it is clear that the testator not only used the term in the proper legal sense to designate his immediate offspring, but also as descriptive of the individuals who stood in that relation to him, and for whose benefit the limitation over was intended. If either of his children named in the second clause, should die, &c., then over to the "balance of his children" therein named. It does not admit of doubt that the word "balance," in this clause, means precisely what the word "surviving" would impart, if used in its stead. The concluding words of the clause, " or to the heirs of their bodies," render it still more certain that the testator meant "surviving children." For it is certain, that it was not his intention that the "heirs of their bodies" should take, if, when the contingency happened, the "balance" of his children named in the second clause were surviving.

If we look, therefore, at the limitation, as it respects the children or immediate offspring of the testator, the case is identical with that of *Booker* v. *Booker*, above cited.

But in the event that all of the legatees, named in the second clause, save one, should die in succession, leaving "heirs of their bodies," and this last one should then die without issue, the heirs of the bodies of the legatees first dying, would be entitled under the will. The question hence arises, whether the limitation, as to the "heirs of their bodies," must, at all events, take effect within the limits allowed by the law for executory devises; as it is not to be controverted that the limitation over could only take effect as an executory devise, and not as a remainder.

The utmost limits allowed by the law of Tennessee, for executory devises, is a life or lives in being, and twenty-one years and the fraction of a year, sufficient to cover the period of gestation.

And it is not controverted that a limitation upon a contingency, which, by the terms of the will, may not happen within that period, is bad; the event, upon the happening of which the estate is to vest, must take place within the allotted time, or the limitation will be void for remoteness.

In considering this question, it is important to bear in mind that the will does not provide a double contingency, or two distinct and

independent contingencies, the limitation upon either of which may be void, without affecting the validity of the other.

The case of a single contingency is presented, on the happening of which, the limitation over was to take effect, and vest first in the children, or immediate offspring of the testator; and secondly, in the heirs of their bodies, if none of such children or immediate offspring were living. And as it would be absurd, at the least, to say, that the contingency described in the will, means a definite failure of issue, and at the same time imports an indefinite failure of issue, it is not to be questioned that if the limitation as to the testator's surviving children, is valid, it must be equally valid as to the heirs of their bodies; and if it is void as to the latter, it is equally void as to the former.

The words of the clause describing the contingency, if they stood alone, according to their fixed legal meaning, import an indefinite failure of issue. But this technical meaning is not so inflexible, that it may not be controlled by superadded words or expressions, from which it may be fairly inferred that they were not used according to such import. And we have seen that the associated words in the clause are sufficient, if confined to the testator's immediate offspring, to restrict the dying without issue, to a dying without issue living at the time of the death. But it would be absurd and illogical to hold, that because the testator contemplated an event, that is, the division of the shares of any of the legatees who might first die, without issue, amongst the survivors, which if it occurred must take place within a lifetime in being; and which, therefore, implied that he intended a definite failure, in regard to his immediate offspring; he must also have intended to limit the property, as to the heirs of their bodies, upon a dying without issue, living at the death, or within the period allowed.

The words of the clause referring to the testator's immediate offspring, do not express his whole intention. We must look to the whole will, to all of the language of the clause, and especially to the words which express his wishes in reference to the "heirs of the bodies of his children," who might be dead when any other one of them should die without issue.

The general intention of the testator would seem to be too plain to be misapprehended. He manifestly intended, that the property

bequeathed should not go out of the family. Hence, why attempt to restrain the children from disposing of the property given to them in his will, and direct that upon the death of either of them without issue, his share should go over to his brothers and sisters, who survived him? Why direct, that if upon the death of any of his named children, without issue, his share should go to the heirs of their bodies, if none of the balance of his children were then living? For this is undoubtedly the construction of the fifth clause.

In the face of this clear intention can it be maintained, that the testator intended that, if either of his children should die without issue then living, the share of such child should go to his surviving brothers and sisters, and that he did not intend that the property bequeathed should go over, if the child dying should leave issue, although such issue should die the day after? Again, can it with any show of reason be maintained, that the testator did not intend that if the last surviving child should die, leaving a child, that upon the death of such child, the share bequeathed to its father should go to the "heirs of the bodies" of the "balance" of his children, instead of passing as it might do into the hands of strangers to his blood?

Now what word or expression is there in the fifth clause, referring directly to the limitation to the heirs of the body of the testator's children, which could control this general intention, or in other words, which imply that the testator intended, in regard to them, a definite failure of issue?

The words "or the heirs of their bodies," it is admitted, should be construed with the addition of the words "to be equally divided," occurring in the previous member of the sentence. It should be read then, "or to the heirs of their bodies, to be equally divided amongst them."

Now if the words "heirs of their bodies" are held to designate a class of persons, who would be entitled to take as a class at any period, whenever there should be a failure of issue, it will not be pretended, that they are restrictive of the technical meaning. So far from it, if thus construed, they would constitute a strong reason for holding that the testator used the words, expressing the contingency, in their appropriate legal sense.

But it is said, that these words, as they are employed in the will, are not to be understood as words of limitation, but as words of purchase; not as a designation of a class of persons to take from generation to generation as heirs, but as descriptive of the individuals constituting a class, who under the contingencies specified, would be entitled to take as purchasers.

If the limitation over had been to the surviving children and the heirs of their bodies, there would be little room for doubt, according to the cases in Tennessee, that the word " heirs" here, should be construed a word of limitation, and not a *descriptio persona-rum*. But as the limitation to the heirs could not take effect, unless the devise over to the surviving children had failed by reason of their death, there is not a shadow of doubt that they could only take as purchasers.

The words, " heirs of their bodies," therefore designate the individuals who are entitled to take in the character of purchasers.

It is laid down by respectable authority, that the natural meaning of these words is children, and if there are none, grandchildren. Keyes on Chat. 76. This construction is frequently given to the words " heirs of the body," when it is necessary to give effect to the plain intention of the testator, which would be defeated if they were to receive the legal meaning attached to them. And it is certain, that in devises of personal property the language of the courts in Tennessee, if not the facts of the cases decided, sustain this interpretation. *Hickman* v. *Quin*, 6 Yerger, 96; *Loring* v. *Hunter*, 8 Ib. 29; *Evans* v. *Wells*, 7 Humph. 559.

Then conceding that the testator meant " children," or the immediate offspring of the several legatees, and that he intended to exclude their lineal descendants in the remoter degrees, it remains to be ascertained, whether by the terms of the devise the contingency upon which the limitation to these persons would vest, was to happen, if it took place at all within the allotted time ?

Unless we assume the very question in contest, that is, that the testator intended a definite failure of issue, there is no word or expression, however slight, in the clause, from which it is possible to infer, that the testator intended the limitation to vest at all events during the lifetime of any of the legatees. On the contrary, when it is borne in mind that the devise over to the " heirs of their

bodies," if any of the legatees were living when the dying occurred, could not take effect, it is manifest that the very opposite was contemplated.

The words, "dying without issue," have a twofold meaning ; the one signifies a dying without issue at one's death, and the other a dying without issue whenever such issue fails. *Targett* v. *Grant*, Gibb Eq. R. 149. An indefinite failure of issue means a failure of issue whenever it shall happen, sooner or later, without any fixed, definite, certain period, within which it must happen. 16 John. R. 400. A person is therefore said to die without issue whenever his issue or lineal descendants become extinct. Hence, unless we again beg the question, and start out with the assumption, that a definite failure of issue was intended, there is nothing in the will upon which it is possible to raise even an implication that the testator contemplated that the last surviving legatee would, when the failure of his issue occurred, be living contemporaneously with the lineal descendants of his other children.

This seems too evident to admit of debate. For if the preceding words, " to be equally divided," be read in connection with the words, " the heirs of their bodies," which conclude the sentence, it is clear that an event was contemplated, which could not by any possibility take place until after the death of all the parties named in the second clause of the will.

The share of the legatee last dying could not go to the " balance" of the testator's children, for the obvious reason that none of them would be then surviving. Such share would vest in the " heirs of the bodies" of the children who had previously died ; a division amongst whom, of necessity implies the performance of an act subsequent to the death of all of the testator's children named in the second clause. Now conceding that by the " heirs of their bodies" is meant the children or immediate offspring of the testator's children, upon what circumstance described, or upon what expression employed in the will is it possible to found the presumption that he intended the limitation to take effect only in the event of a dying without issue living at the death ?

The word " then" immediately following the word " heirs," in the fifth clause, is relied upon, which it is said is an adverb of time, referring to the death of any one of the parties named in the second

Gray *v.* Bridgeforth et al.

clause, and fixing that event as the time when the limitation over was to take effect. But it seems to be well settled in England that in the limitations of estates and framing contingencies, it is merely a word of reference, and relates to the determination of the first limitation in the estate, when the contingency arises. *Biggs* v. *Burley,* 1 Br. Rep. 190 ; 2 Ib. 75, 77 ; *Beauclerk* v. *Dormer,* 2 Atk. 307. In the case last cited, the limitation over was to a party *in esse.* It was nevertheless held by Lord Hardwicke not to have the effect, to restrict the dying without issue, to a dying without issue then living. In the case before us, the limitation over to the heirs of their bodies, was not to persons in existence when the will was made.

There is, therefore, less reason for giving to this word the effect contended for. And we may add, that not a single case has been cited or found in the Tennessee Reports, where the operation insisted on has been given to this word, unless in connection with other expressions, as in the case of *Loring* v. *Hunter,* 8 Yerger, which showed clearly that it was not simply a word of reference.

It is perfectly certain that the expression "to be equally divided," referred to the "heirs of their bodies," cannot have the effect of giving a restrictive meaning to the words "dying without heirs," unless a division amongst them, if it take place at all, must of necessity occur within the lifetime of some one of the parties named in the will, or within twenty-one years thereafter.

A single illustration will, at the same time show, that such is not the case, and demonstrate that the limitation over to the "heirs of their bodies" is too remote, and therefore void.

Let it be supposed that all of the legatees named in the second clause were dead, leaving issue of their bodies, except Minerva, the wife of the appellant, who had then died, leaving issue, which survived her for twenty-five years, and then died without issue. Under the express terms of the will, the children or immediate offspring of the legatees dying before Minerva, in such case would be entitled to her share. Such is undoubtedly the import of the will, unless we assume that a definite failure of issue was intended. But what has been above said shows conclusively that there is nothing upon which that assumption can be based. And as the limitation might with perfect consistency to the terms of the will, take effect at a period

beyond the time allowed by the laws of Tennessee, it was void; consequently the property bequeathed vested absolutely in the first takers.   Hence the appellant in virtue of his marital rights acquired the absolute title to the subject-matter in controversy. Most of the cases cited by counsel for the appellees, upon examination will be found, either not to conflict with this opinion, or to decide some point not material to the question before us.

The case of *Hickman* v. *Quin*, 6 Yerger, 96, much relied on in the argument, grew out of a will made in Virginia.   " The will of Benjamin Goodrich (says Judge Catron) vested a life estate to the slaves in Amy W. Lanier, and the remainder in the heirs of her body.   This, in Virginia, was a lawful devise to her children."

The case of *Brooke* v. *Croxton*, 2 Grat. 506, was decided in the Court of Appeals of Virginia;  and was, of course, determined with reference to the statute, which gives to the expression, " die without issue," " die without heirs," &c., a meaning directly opposite to that which is admitted to be the fixed technical construction of the same phrases in the State of Tennessee.

And the cases of *Loring et al.* v. *Hunter*, 8 Yerger, 4, and *Evans* v. *Wells*, 7 Humph., decide that the words, "heirs of the body," may be held to mean " children," and hence, when employed in that sense, are not words of limitation.   These cases prove what is admitted, that these words, that is, "heirs of their bodies," in the fifth clause of the will, import " children," or the immediate offspring of the several legatees under the will.

Upon questions so frequently the subject of legal discussion and judicial examination, as the questions presented in this case have been, in the courts of Tennessee, it would, at the least, be unreasonable to expect that there could be perfect uniformity and consistency in the decisions.   There is, however, in reference to the chief questions involved in this case, much more apparent than real conflict in the decisions.   And after a careful examination of the cases, I am satisfied that if the conclusion at which I have arrived is not sustained by all of them, it is at least in accordance with the decisions in those cases which have been the best considered, and therefore entitled to the greatest weight.   The cases of *Polk* v. *Faris*, 9 Yerger, 208 ; *Bowman* v. *Hicks*, 3 Humph. 648 ; *Kay*

Sam v. The State.

v. *Connor*, 8 Ib. 624; *Kirkpatrick* v. *Woodrum*, 2 Swan, 218, clearly sustain this view of the subject.

Having come to the conclusion above stated, it follows that, in my opinion, the decree of the vice-chancellor should be reversed.